IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| RSC EQUIPMENT RENTAL, INC., n/k/a UNITED RENTALS (NORTH AMERICA), INC., <br>     *Plaintiff,* <br><br> v. <br><br> THE CINCINNATI INSURANCE COMPANY, M.V.E., INC. and NGM INSURANCE COMPANY, <br>     *Defendants.* | CASE NO. 6:14-CV-00003 <br><br> **MEMORANDUM OPINION** |

This matter is before me upon consideration of the motions to dismiss filed by Defendants Cincinnati Insurance Company ("Cincinnati") and M.V.E., Inc. ("MVE"). The principal issue in this case is whether Virginia Code § 11-4.1, which voids indemnification provisions in construction contracts, invalidates an indemnification clause in a rental contract for a forklift because the forklift was used during construction. As I determine that it does not invalidate the indemnification clause, I will deny the motions to dismiss.

## I. BACKGROUND

On September 3, 2008, RSC Equipment Rental, Inc. ("RSC")[1] rented a fork lift to MVE, which was serving as the general contractor on a project to construct a Bojangles restaurant in Rustburg, Virginia ("the Restaurant Site").

The rental agreement contained an indemnification provision requiring MVE to indemnify RSC under certain circumstances. In full, the provision reads:

> **Customers Indemnification** Customer agrees to reimburse, indemnify, hold harmless and defend, at Customer's expense, RSC, its subsidiaries, parent company, affiliate companies, and their agents, officers, directors

---

[1] RSC is now known as United Rentals (North America), Inc., but is referred to in the filings by both parties, and accordingly in this opinion, as RSC.

[1]

and employees, from and against all losses, liabilities, damages, injuries,
demands, costs, expenses (including lawyer and investigate fees), claims,
fines, settlements or penalties including, without limitation, bodily injury,
death, property damage or other damage arising out of any use of the
Equipment, any breach of this Agreement, Customer's violation of any
applicable regulations, or improper use, possession, operation, erection,
dismantling, servicing, or transport involving the Equipment, Customer's
contamination of the Equipment by any party, strict liability or negligence
claims arising by any party arising out of any defect in the design,
manufacture, warnings, instructions, operation, repair or failure to discover
a defect, or incurred by RSC in any matter from this transaction, including
claims of or liabilities to third parties. Customer agrees to present any
claim to his insurance carrier for all such expenses and in the event Customer
has no insurance to cover such losses, Customer agrees to pay RSC for
such losses.

The rental agreement also contained an insurance provision requiring MVE to procure and maintain a commercial general liability policy providing $1 million bodily injury/property damage liability insurance. In relevant part, the provision reads:

**Customer's Insurance Obligation** Physical Damage to Equipment: All
Customers must provide to RSC, at the time the equipment is rented, a
certificate of insurance naming RSC as a loss payee and/or additional
insured on said certificate evidencing coverage for physical damage to
Equipment. Such physical damage insurance covering the Equipment
may not be canceled or materially modified except upon twenty (20)
days prior written notice to RSC at the branch office identified on this
Agreement. In the event of Customer's failure to provide said certificate
of insurance at the time the Equipment is rented, Customer will be
charged the LDW Insurance fee as set forth in the agreement.
Bodily Injury/Property Damage Responsibility to Third Parties: In
addition to the foregoing physical damage insurance for the Equipment,
Customer will at Customer's expense, at all times during the term of
this Agreement, maintain in force a commercial general liability insurance
policy covering bodily injury/property damage liability on the Equipment
in an amount not less than one million dollars ($1,000,000) combined
single limit. Such third party liability coverage shall be primary, and not
in excess or on a contributory basis, and shall provide coverage for liability
for injuries and/or damages sustained by any person or persons agents or
employees of Customer, and Customer's indemnity obligations herein.

MVE delivered a certificate of insurance from Cincinnati that provided commercial general liability coverage, named MVE as an insured, and complied with the terms of the rental

agreement's insurance provision. In addition to this primary policy, MVE obtained a policy from Cincinnati that provided excess coverage of $5 million per occurrence and $5 million in the aggregate. MVE subcontracted with Commonwealth Mechanical Corporation on September 15, 2008, to work at the Restaurant Site, and the subcontract obligated Commonwealth to procure insurance naming MVE as an additional insured and cover MVE for operations at the Restaurant Site. Pursuant to that contract, Commonwealth procured from NGM Insurance Company a policy that provided liability coverage and contained a "Virginia – Contractors Extension Endorsement" which qualified MVE as an additional insured.

On November 24, 2008, Joseph Woods was installing a driveway as part of the construction of the Bojangles in Rustburg. Woods was an employee of J & J Paving, another subcontractor of MVE. While working, Woods was hit in the head and seriously injured by a light post that was moved by the forklift rented by RSC. The forklift was operated by an employee of Commonwealth. J & J Paving paid Woods worker's compensation, his exclusive remedy against J & J Paving and all of the other contractors on the Bojangles job. Woods filed suit on November 9, 2010, in the Circuit Court of the City of Richmond naming RSC Equipment Rental, Inc., Bojangles' International, LLC, LAT Land Company, LLC, Mountain Food Services, LLC, and GEHL Company as defendants. The case was transferred to the Circuit Court of Campbell County and is currently pending against RSC only, the other defendants having been dismissed. RSC demanded that MVE defend and indemnify RSC against this suit pursuant to the terms of the rental agreement. In a letter to RSC's counsel dated March 2, 2011, Cincinnati agreed to defend RSC; however, Cincinnati reserved its right to assert that the indemnification clause violated Virginia Code § 11-4.1 and disputed that the terms of the rental agreement

required RSC to be named as an additional insured. RSC claims it had no notice prior to January 6, 2014 that MVE planned to disclaim its defense and indemnification obligations.

Woods' case is scheduled for trial in the Circuit Court of Campbell County in September 2014. Accordingly, the parties seek a declaration of the obligations and rights owed to RSC pursuant to the rental contract.

## II. LEGAL STANDARD

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). When considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true, and must draw all reasonable inferences in favor of the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court is not required to "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted).

This insurance contract dispute is before the Court under its diversity jurisdiction, and therefore state law will apply. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Here, the parties agree that Virginia law applies.

## III. DISCUSSION

### 1. Waiver

RSC contends that MVE and Cincinnati waived their right to contest the validity of the indemnity provision and that they are equitably estopped from disclaiming their defense obligations. "Waiver is the intentional relinquishment of a known right, with both knowledge of

[4]

its existence and an intention to relinquish it." *Creteau v. Phoenix Assur. Co. of N.Y.*, 202 Va. 641, 644, 119 S.E.2d 336, 339 (1961). "The general rule supported by the great weight of authority is that if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. The insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert such grounds." *Dairyland Ins. Co. v. Hughes*, 317 F. Supp. 928, 938 (W.D. Va. 1970).

By contrast, a liability insurer is not deemed to have waived, nor is it estopped from asserting a lack of coverage defense, if it informs the insured of its position during the defense and gives timely notice. *Norman v. Ins. Co. of N. Am.*, 318 Va. 718, 239 S.E.2d 902 (1978). Notably, "the reservation of rights procedure that is timely pursued does not admit a duty to defend and, in fact, it expressly preserves the right to challenge any obligations under the relevant policy." *Mount Vernon Fire Ins. Co. v. Adamson*, No. 3:09-cv-817, 2010 WL 3937336, at *6, 2010 U.S. Dist. LEXIS 106758, at *16 (E.D. Va. Sept. 15, 2010).

In the March 2, 2011 letter from Cincinnati to RSC's counsel,[2] Cincinnati stated that it "agree[d] to accept the tender and to defend RSC in the lawsuit pursuant to a full and complete reservation of rights to assert that the indemnification clause set forth in the rental agreement violates the anti-indemnification statute – Virginia Code § 11-4.1" and also stated "that Cincinnati is not agreeing to defend RSC as an additional insured under the Policy." In RSC's

---

[2] I note that I may properly consider Cincinnati's March 2, 2011 correspondence without converting the motion to dismiss into a motion for summary judgment, because "the court may consider dispositive documents that are either attached to, or referenced, in the complaint" during the motion to dismiss phase. *Heretick v. Amberley Shipping Corp.*, 227 F.Supp.2d 575, 577 (E.D. Va. 2002).

[5]

own complaint, RSC acknowledges that "Cincinnati agreed to defend RSC in the Liability Suit pursuant to a reservation of rights on March 2, 2011." Accordingly, both because Cincinnati did clearly and explicitly reserve its rights to challenge the indemnification provision and because RSC admitted as much in its complaint, I find that Cincinnati has not waived its right to challenge the indemnification provision in question, and I will consider the validity of the indemnification provision.[3]

2. Virginia Code § 11-4.1

The instant motion turns on whether the indemnification clause in the rental contract between RSC and MVE is void and unenforceable under Virginia Code § 11-4.1 because the contract requires MVE to "reimburse, indemnify, hold harmless and defend" RSC. Virginia Code § 11-4.1, reads, in relevant part:

> **Section 11-4.1 Certain Indemnification Provisions in Construction Contracts declared void**
> Any provision contained in any contract *relating to* the construction, alteration, repair or maintenance of a building, structure or appurtenance thereto, including moving, demolition and excavation connected therewith, or any provision contained in any contract relating to the construction of projects other than buildings by which the contractor performing such work purports to indemnify or hold harmless another party to the contract against liability for damage arising out of bodily injury to persons or damage to property suffered in the course of performance of the contract, caused by or resulting solely from the negligence of such other party or his agents or employees, is against public policy and is void and unenforceable. This section applies to such contracts between contractors and any public body, as defined in § 2.2-4301.
>
> This section shall not affect the validity of any insurance contract, worker's compensation, or any agreement issued by an admitted insurer.[4]

---

[3] Because I ultimately find that the indemnification provision is valid, I need not consider whether MVE, as opposed to Cincinnati, waived its rights. I simply note that had all parties waived their right to challenge the indemnification provision, I would not need to address their arguments.

[4] If this sentence applied to the rental agreement in this case, Virginia Code § 11-4.1 would not invalidate the agreement regardless of how broadly the rest of the statute was construed. While the rental agreement does contain an insurance provision, it is not itself an insurance contract, and neither RSC nor MVE are admitted insurers.

[6]

(Emphasis added.)

Section § 11-4.1 is an exception to the general public policy of Virginia, which allows parties broad freedom to contract. *See, Shuttleworth, Ruloff & Giordano, P.C. v. Nutter*, 254 Va. 494, 498, 493 S.E.2d 364, 366 (1997) (observing that Virginia "looks with favor upon the making of contracts between competent parties upon valid consideration and for lawful purposes"). Virginia courts are averse to holding contracts unenforceable on public policy grounds. *See Estes Express Lines, Inc. v. Chopper Express, Inc.*, 641 S.E. 2d 476, 480 (Va. 2007) (finding broad indemnity agreements enforceable because "it [is] highly unlikely that a party would neglect to exercise ordinary care simply in anticipation that it ultimately might not have to bear the burden of any liability incurred as a result of its failure to exercise ordinary care to avoid personal injury to another"); *see also Green v. Sauder Mouldings, Inc.*, 345 F. Supp. 2d 610, 612 (E.D. Va. 2004) (finding that "in the context of business negotiations, two entities, as part of the bargain, can agree to an indemnification provision" without violating public policy). Since Virginia Code § 11-4.1 is in opposition to these principles and thus in derogation of the common law of Virginia, it must be construed narrowly. *See, e.g., Schwartz v. Brownlee*, 253 Va. 159, 166, 482 S.E.2d 827, 831 (1997) ("Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms.").

In a similar case, the United States Court of Appeals for the Fourth Circuit addressed the applicability of Virginia Code § 11-4.1, in *Carpenter Insulation & Coatings Co. v. Statewide Sheet Metal & Roofing, Inc.*, No. 90-2426, No. 90-2471, 1991 U.S. App. LEXIS 14267, at *3–11

---

Accordingly, this language is inapplicable. *Cf. Uniwest Constr., Inc. et al. v. Amtech Elevator Servs., Inc. et al. ("Uniwest I")*, 280 Va. 428, 442 n. 8, 699 S.E.2d 223, 230 n. 8 (2010) (stating that, in the context of analyzing a construction subcontract, this language "is irrelevant . . . where the question is whether the indemnification provision of a subcontract is void pursuant to Code § 11-4.1. The Subcontract is not an insurance contract and neither Uniwest nor Amtech, the parties who executed it, are admitted insurers").

[7]

(4th Cir. July 9, 1991). While *Carpenter* is an unpublished opinion and therefore is not binding precedent, its analysis is nevertheless instructive, and it is the only case within this circuit that gives such guidance. In *Carpenter*, the challenged contract was one under which Statewide Roofing purchased roofing materials from Carpenter to use "in the business of installing and repairing roofing systems." *Id.* at *3. The Fourth Circuit held that Virginia Code § 11-4.1 did not invalidate the indemnification provision in the agreement, noting that the contract in question was "a sales agreement for chemical roofing materials, not a construction contract." *Id.* at *7.

The Fourth Circuit did not find that the sale of roofing materials "related to" construction even though those materials would later be used in construction. Instead, the court focused on the type of contract at issue. Just as "a sales agreement for chemical roofing materials [is] not a construct contract,"[5] in this case a rental agreement for a forklift is not a construction contract. *Id.; see also McMunn v. Hertz Equip. Rental Corp.*, 791 F.2d 88, 92–93 (7th Cir. 1986) (stating that while "general language invites broad readings," an anti-indemnification "statute is directed at a particular problem, construction safety, from which the indemnity agreement in the present case is remote").[6]

---

[5] The Supreme Court of Virginia has not explicitly ruled on whether Virginia Code § 11-4.1 applies to rental agreements. However, in *Schuiling v. Harris*, 286 Va. 187, 192 n. 3 747 S.E.2d 833, 835 n. 3 (2013), the court described the statute in a footnote as covering "any provision of a *construction* contract." (Emphasis added.) Notably absent in this description of the statute's scope is the expansive interpretation of the "relating to" language that Defendants rely on.

[6] Other courts have held similarly. *See, e.g., Orville Milk Co. v. Beller*, 486 N.E.2d 555, 561 (Ind. App. 1985); *Pritts v. J.I. Case Co.*, 310 N.W.2d 261, 267 (Mich. App. 1981). To be sure, other state courts have interpreted analogous anti-indemnification statutes broadly instead. *See, e.g, Aetna Cas. & Sur. Co. v. Marion Equip. Co.*, 894 P.2d 664, 666–670 (Alaska 1995); *see also United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 237 P.3d 728, 732 (N.M. 2010); *Elliott Crane Serv. v. H.G. Hill Stores*, 840 S.W.2d 376, 380 (Tenn. App. 1992); *Folkers v. Drott Mfg. Co.*, 504 N.E.2d 132, 137 (Ill. App. 1987); *Calkins v. Loraine Div. of Keohring Co.*, 613 P.2d 143, 145 (Wash. App. 1980); *Am. Pecco Corp. v. Concrete Bldg. Sys. Co.*, 392 F. Supp. 789 (N.D. Ill. 1975). Many of these state courts interpret their state statutes more broadly because those statutes, such as Alaska Stat. § 45.45.900, are in fact more broadly worded than Virginia Code § 11-4.1, and those cases are thus distinguishable. To the extent that some of these cases are more directly on point, I find the reasoning in *Carpenter* and *McMunn* to be more persuasive.

Counsel for MVE and Cincinnati argue that *Carpenter* is distinguishable, stating that in *Carpenter* "there [was] no evidence that . . . the sales contract for the roofing materials made any mention of a specific construction project," whereas here the agreement called for the forklift to be dropped off at the construction site. However, the relevant inquiry is not whether RSC knew that the forklift it was renting was going to be used in construction, but rather what kind of contract the parties signed. *Carpenter*, 1991 U.S. App. LEXIS 14267, at *7; *see also Uniwest Constr., Inc. et al. v. Amtech Elevator Servs., Inc. et al. ("Uniwest I")*, 280 Va. 428, 441 699 S.E.2d 223, 230 (2010) ("[T]he unambiguous language of Code § 11-4.1 requires [the Court] to look to the contract containing the provision, not the circumstances from which the claim for indemnification arose, to determine whether an indemnification provision violates Code § 11-4.1."). It is clear that the contract in this case was a rental agreement rather than a construction contract, and thus the factual distinction between this case and *Carpenter* is immaterial.[7]

Even if I could read Virginia Code § 11-4.1 broadly enough to encompass rental contracts like the one at issue, by its own language the statute only applies to harms "suffered in the course of performance of the contract." Va. Code § 11-4.1. In *Carpenter*, the Fourth Circuit noted that the harms "were not 'suffered in the course of performance' of the [contract] . . . [r]ather, their alleged injuries occurred during the performance of a [different] contract between Statewide Roofing and Hampton County." *Carpenter*, 1991 U.S. App. LEXIS 14267, at *7–8 (citing Va. Code § 11-4.1). Similarly, the injury to Mr. Woods did not occur during the course of the rental's agreement performance. Instead, Mr. Woods was injured during the actual construction of the restaurant, when MVE was working with its subcontractors Commonwealth Mechanical and J & J Paving. The language of the statute and the reasoning in *Carpenter* both

---

[7] If the circumstances from which the claim arose were relevant, the provision in *Carpenter* that was upheld would be more likely to be invalid than the provision in this case—the roofing materials in *Carpenter* could only be used in construction whereas a rented forklift might have other uses, such as moving goods in a warehouse.

[9]

Case 6:14-cv-00003-NKM-RSB   Document 69   Filed 08/07/14   Page 9 of 12   Pageid#: 1572

indicate that the phrase "course of performance" is to be read as narrowly as the "relating to" language of the statute. Therefore, even if Virginia Code § 11-4.1 encompassed rental contracts, it would not invalidate the indemnification provision at issue.

### 3. Additional Insured Status

Although I find that the indemnification provision obligates Defendants to defend and indemnify RSC, RSC claims that it is also entitled to coverage because the insurance provision of the rental agreement obligates MVE to name RSC as an additional insured. If the insurance provision requires RSC to be named as an additional insured, RSC would be covered regardless of the scope of Virginia Code § 11-4.1, and refusal to provide coverage to RSC would violate to the clear language of the policy between MVE and Cincinnati. That policy states that any party MVE was "required to add as an additional insured under this Coverage Part by reason of . . . [a] written contract or agreement . . . is an insured."

The insurance provision of the rental agreement has several different subsections. Regarding physical damage to equipment, the provision specifies that RSC must be named "as a loss payee and/or additional insured on said certificate evidencing coverage for physical damage to the Equipment." No similar language is used in the bodily injury/property damage segment of the provision, instead only requiring that "Customer will at Customer's expense, at all times during the terms of this Agreement, maintain in force a commercial general liability policy." *Id.* In *Hertz Corp. v. Zurich Am. Ins. Co.*, 496 F. Supp. 2d 668, 672 (E.D. Va. 2007), the court analyzed a nearly identical insurance provision and concluded that "[a]ll this language requires is that Hartman Walsh insure itself. It says nothing about Hartman Walsh insuring HERC, or anyone else for that matter. This makes perfect sense. HERC certainly wants to know that its

[10]

lessees have adequate liability coverage should the lessee and HERC be found jointly liable to a third party." *Id.* at 674.

Likewise, the rental agreement here merely requires a customer like MVE to insure itself. RSC is correct that the primary and noncontributory language suggests that, when applicable, the insurance MVE was obligated to buy "must pay before other applicable policies . . . and without seeking contribution from other policies that also claim to be primary." Yet, it does not require RSC to be named as an additional insured. It is significant that the insurance provision in the rental agreement specifies that RSC was to be named as an additional insured for physical damage to equipment, but it does not make that specification for instances of bodily injury or property damage. This distinction reinforces my conclusion that Defendants were not obligated to name RSC as an additional insured under the rental agreement.

However, while the insurance provision does not require RSC to be named as an additional insured, it does reference MVE's indemnity obligations, underscoring that the indemnification provision was intended to provide coverage to RSC. The insurance provision of the rental agreement states that the policy "shall provide coverage for liability for injuries and/or damages sustained by any person or persons agents or employees of Customer, *and Customer's indemnity obligations herein*." (Emphasis added.) In other words, the bodily injury portion of the insurance provision did not need to explicitly name RSC as an additional insured because it referenced the indemnification obligations that independently covered RSC. Thus, while Defendants were not required to name RSC as an additional insured, the insurance provision of the rental agreement plainly states that because of MVE's indemnification obligations, RSC is entitled to coverage.

### IV.  CONCLUSION

[11]

I find that the indemnification provision of the rental agreement is enforceable. Neither Virginia Code § 11-4.1 nor public policy invalidates the indemnification provision. Therefore, it entitles RSC to indemnification by MVE and its insurer. Defendants owe the indemnification and defense RSC seeks pursuant to the bargained for agreement between the parties. Accordingly, I will deny the motions to dismiss. An appropriate order follows.

Entered this __7th__ day of August, 2014.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

[12]

Case 6:14-cv-00003-NKM-RSB   Document 69   Filed 08/07/14   Page 12 of 12   Pageid#: 1575